COMMONWEALTH *vs.* ELLEN MUNSEY.

Upon the trial of Mrs. M. for the crime of illegally selling intoxicating liquor, the testimony of a witness that he went to the house of Mr. M. at dusk, and bought a pint of gin of a lady when one or two other young ladies were present; that it was rather dark; that he thought, but could not swear positively that the lady who sold him the liquor was Mrs. M.; that he was never at M.'s house before or since; and that he could not swear that the woman who sold him the liquor was the woman then defending the suit, is, standing alone and by itself, evidence from which a jury may legally find that Mrs. M., the defendant, was the person who made the sale.

Upon the trial of a wife for the commission of a crime, the husband's coercion will be presumed, though he is not actually present, if he is so near that she is under his immediate influence and control.

COMPLAINT to a trial justice charging that the defendant was a common seller of intoxicating liquor.

At the trial in the Superior Court, upon appeal, before *Bacon*, J., the government, to prove one of the sales, called one Dunakin, who testified that he went to the house of Robert Munsey, the defendant's husband, just at dusk, and got a pint of gin " of a lady there," and paid for it; that there were " one or two other young ladies " there; that it was " rather dark; " that he thought the lady who sold him the liquor was Mrs. Munsey, but he could not swear positively that it was. Being further asked if the woman who sold him the liquor was the same who was now defending, he said " he could not swear to its being the same one." Witness said he had never been at Munsey's before or since. The defendant objected to this as insufficient evidence of a sale by the defendant to Dunakin, but the court ruled that it was a question for the jury.

One Brown, another witness for the government, testified that he was present at Munsey's house when one Moody bought some gin there of Mrs. Munsey, and paid for it. The district attorney asked if Mr. Munsey was there, and witness said, " I think he was; I heard the boys say he was out at the barn doing the chores." The district attorney asked the witness if he himself saw Munsey anywhere, and witness answered " No." There was no evidence as to the distance of the barn from the house, or as to the situation of the barn. Mrs. Munsey went into the bedroom

to get the liquor. The defendant objected that there was no evidence that the husband was so far absent that the wife was presumed to be acting independently, and not under his direction and influence. He asked the court to instruct the jury that there was nothing in the distance of the barn from the house, or in the situation of the barn and house proved in the case, which, as matter of law, would prevent the defendant from being deemed to be under the husband's influence and control when making the sale in question. But the court declined so to instruct, and left it to the jury to say whether on the evidence the husband was present, and whether the defendant was acting under the immediate influence or control of her husband.

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*C. Delano*, (*J. C. Hammond* with him,) argued as to the testimony of Dunakin, that there was no sufficient evidence of the identity of the defendant as the person who made the sale ; that the whole evidence was confined to the single expression, that witness " thought the lady " " who sold him the liquor was Mrs. Munsey, but he could not swear positively it was," which was nothing more than to say it was his opinion, or he supposed, it was Mrs. Munsey ; that it was evident from the fact that he never was at Munsey's at any other time, and nowhere said that he personally knew Mrs. Munsey, that he used the word " thought " in the sense of " supposed ; " that he did not even " *think* " that the person defending was the same person who sold him the liquor ; that in *Commonwealth* v. *Cunningham*, 104 Mass. 545, the witness swore to a resemblance ; but this witness did not ; that it was for the government to show a sufficiently certain basis of belief, before a witness could be asked what he believed ; and that great caution should be used in admitting evidence of identity. 1 Taylor Ev. § 59.

*C. R. Train*, Attorney General, for the Commonwealth.

AMES, J. It is impossible to say, upon this report, that there was no evidence that the sale to Dunakin was made by the defendant. Its weight and effect were for the jury to decide.

With regard to the remaining exception, it has been decided that if a wife, in the absence of her husband, do a criminal act, even in obedience to his order, her coverture will be no defence. *Commonwealth* v. *Murphy*, 2 Gray, 510. *Commonwealth* v. *Feeney*, 13 Allen, 560. *Commonwealth* v. *Gannon*, 97 Mass. 547. In order to make out the defence that she was acting under the coercion or control of the husband, it must appear that he was present at the time. *Commonwealth* v. *Butler*, 1 Allen, 4. But in order to establish the fact of his presence, it does not seem to be necessary to show that the act was done literally in his sight. If the husband were near enough for the wife to be under his immediate influence and control, though not in the same room, it is sufficient. *Commonwealth* v. *Burk*, 11 Gray, 437. If he were on the premises and near at hand, a momentary absence from the room, or a momentary turning of his back, might still leave her under his influence. *Commonwealth* v. *Welch*, 97 Mass. 593. The instructions given to the jury may have led them to suppose that there could be no influence and control capable of exonerating the wife, unless the husband were literally present, and in sight of the wife. *Exceptions sustained.*